UNITED STATES of America,
Plaintiff-Appellee,

v.

John McMillan GREGG, Defendant-
Appellant.

No. 16695.

United States Court of Appeals
Seventh Circuit.

June 26, 1969.

Rehearing Denied July 31, 1969.

Dean E. Richards, Indianapolis, Ind., for appellant.

K. Edwin Applegate, U. S. Atty., Sidney Milun, George A. Brattain, Indianapolis, Ind., for appellee.

Before HASTINGS and KNOCH, Senior Circuit Judges, and KERNER, Circuit Judge.

KNOCH, Senior Circuit Judge.

The defendant-appellant, John McMillan Gregg, and his co-defendant who is not involved in this appeal, were found guilty after trial by jury of violating Title 18, U.S.C. § 2113(a), robbery of a national bank. Appellant was sentenced to serve eighteen years in prison.

Appellant seeks reversal of his conviction on three grounds: (1) he contends that evidence was improperly admitted at his trial which although allegedly obtained in a search incidental to arrest actually was secured through a later search at the scene of arrest by Federal Bureau of Investigation agents after Indianapolis Police officers who made the arrest had removed the co-defendant and turned him over to the F.B.I. agents

who arrived after the arrest had been made;

(2) he argues that inadmissible eyewitness testimony was adduced at the trial which resulted from an improper "line-up" in that eyewitnesses to the robbery were told to "go downtown and identify the robbers," and then shown the suspects singly;

(3) appellant characterizes as reversible error the denial of his unopposed motion for discovery under Rule 16, Federal Rules of Criminal Procedure, to inspect items seized from him and intended for use as evidence at his trial.

It was stipulated that the Linwood Branch of the Merchants Bank and Trust Company of Indianapolis, Indiana, is a national bank situated in the Southern District of Indiana.

■ With respect to the appellant's first point, we have closely scrutinized the evidence adduced at the hearing on the motion to suppress and at the trial itself. Appellant concedes that a legal arrest of the co-defendant by the Indianapolis Police officers occurred and that evidence secured through a simultaneous search by those officers would have been admissible. He contends that the arrest was complete when the federal agents arrived and that those agents could not engage in a search "incidental" to an arrest in which they had not participated. He sees two separate operations: (1) Indianapolis Police found and arrested his co-defendant, (2) F.B.I. agents found and arrested appellant and then searched the room outside which the co-defendant was arrested: Room 205 of the Mohawk Motel.

No objection is here raised to the contents of the two bags found in the possession of the two defendants at the time of arrest or the items on their persons. These items included money and weapons. Appellant's argument is directed to the evidence secured by search of Room 205 of the Mohawk Motel and of the automobile parked in its vicinity.

The search of the automobile, itself used in the commission of the crime, was conducted promptly at the scene of the arrests with keys recovered from Room 205, unlike the automobile search condemned as too remote to meet the test of reasonableness in Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, where the automobile was searched at police headquarters after its removal from the scene of the arrest.

We are satisfied that there was ample evidence to support a finding that this was an investigation cooperatively conducted by state and federal authorities. Numerous items of the testimony justify that. We note some examples.

Testimony at the trial and at the hearing on the motion to suppress indicated that about 10:45 A.M., July 18, 1966, the Bank was robbed of an amount in excess of $12,000 by two armed men. At the hearing on the motion to suppress, the evidence showed that in a very short time after the robbery Indianapolis Police Officers and F.B.I. agents were at the scene of the crime interviewing the branch manager, the bank tellers and a customer who witnessed the robbery. The witnesses described the two robbers as attired in straw hats, white shirts, khaki trousers and sunglasses. One man was said to be somewhat shorter and stockier than the other who was about six feet tall. The descriptions were promptly broadcast over police radio. About an hour later an automobile description and license number were broadcast with the explanation that an unnamed witness reported seeing two men changing clothes at Linwood and Washington Street in such an automobile.

Indianapolis Police Officer John Charles Gillespie on routine patrol, having heard the descriptions on his patrol car radio, checked motels, reaching Mohawk Motel on East Washington Street at 1:23 P.M. where his inspection of the Motel records and the area disclosed a Plymouth 1966 automobile, black over tan in color, with Ohio license plates No. 62125, and a damaged rear, which met the description previously received.

Officer Gillespie called for assistance. In response to his call, Police Sergeant Anthony Price, Jr., who had also heard the broadcasts, reached the Motel between 1:30 and 1:35 P.M. With Officer Gillespie, he viewed the automobile, through the window of which they saw straw hats on the floor and an object in a case which could be a rifle.

Sgt. Price called for additional assistance. In response to that call, Police Lieutenant Paul Pearsey, who had been at the Bank and who received a description of the robbers and who had also been out in a patrol car, arrived between 1:35 and 1:40 P.M., and directed further operations. Having verified with the desk clerk the information given Officer Gillespie that the automobile in question had been brought in by two men, who were registered as in Room 205, under the names John Kelso and Robert Satterfield, Sgt. Price waited outside that room. In a few minutes a man, whom he identified as the co-defendant, came out carrying a suitcase. The co-defendant was arrested, and was placed in a police car. Special Agent Richard H. Grabham of the F.B.I. had also been at the Bank shortly after the robbery and obtained a description from the witnesses. He received a car radio call that the automobile believed to have been involved in the robbery had been found at the Motel. When he arrived shortly after 2:00 P.M. he found other F.B.I. agents already there.

Special Agent Dennis L. Ploeger of the F.B.I. had also been at the scene of the robbery and had arrived at the Motel about 1:30 P.M. with Agent Randy Waldrop, prior to the arrest of the co-defendant, and prior to the arrival of Special Agent Grabham. He checked the automobile, saw the two hats and the license plate and reaching into the open window removed the two hats from the car. He was one of the agents who searched Room 205 later and was one of those searching the other rooms of the Motel for the second man. Special Agent Richard J. Darragh, Jr., arrived at the Motel after Agents Ploeger and Waldrop just

as the co-defendant was being brought out.

After a discussion with Lt. Pearsey, Agent Grabham assumed custody of the co-defendant. Both F.B.I. agents and Indianapolis Police officers searched various rooms seeking the second man. Special Agent Tommy E. Cauthen of the F.B.I. who arrived at the scene shortly after 2:00 P.M. searched several rooms and about 2:25 P.M. found the appellant in the closet of Room 218 with a blue travel bag between his legs. Agent Grabham designated some of his agents to search Room 205. Sgt. Price and Lt. Pearsey were present and watched this search. We cannot agree that one agency worked separately and independently of the other.

■ Appellant sees the identity evidence as the fruit of an unnecessarily suggestive identification procedure with what he characterizes as deliberate avoidance of safeguards against false identification. He asks us to consider this a plain error under Rule 52(b), Federal Rules of Criminal Procedure although the issue was not raised at the trial.

There were five eyewitnesses to the robbery all of whom identified the co-defendant but who were not so positive on the score of appellant. Michael Dowd, assistant cashier and, at the time of the robbery, temporary manager of the Bank, said appellant looked a great deal like the second robber who had remained in the lobby while the co-defendant went behind the cages and got money out of cash drawers. Mrs. Aileen Winkle, a teller at the Bank, said she had seen appellant at F.B.I. headquarters but at that time she couldn't positively identify him and could not do so at the trial. Mrs. Darlene Clune, another teller at the Bank, unlike the other witnesses, identified appellant as the man who went behind the cages and the co-defendant as the man who remained in the lobby. The witnesses had been referring to the robbers by numbers and said No. 2, the shorter man, went back of the cages and No. 1, the taller man, remained in the

lobby. Mrs. Clune followed the same pattern and testified to the same effect. Yet after some further testimony about the money and about the photographs which had been taken while the robbery was in progress at the Bank, she said she could identify the robbers and that appellant was No. 2 and the co-defendant was No. 1. On cross-examination she said that No. 2 was the shorter man who went behind the cages and again identified him as appellant. Mrs. Jewell Walker, a part time teller at the Bank, at first said that she remembered the robbers as being of about the same height but later said one was somewhat shorter. She identified the co-defendant as the man who came behind the window and the appellant as the man in the lobby. Mrs. Leila Stratman, a customer in the Bank, said the one she "recognized the most" was the one who remained in the lobby. She identified both appellant and co-defendant as the robbers, but said she might be mixed up as to which one went in back. Then she said the man with a marking on his hand went behind the cages. The co-defendant had tattoos on his hands.

With reference to the proceedings at the F.B.I. headquarters, Mr. Dowd testified that he had identified the co-defendant there. He said he had been told there were two men in custody and the authorities wanted to know if he could identify them as either of the men who were in the Bank at the time of the crime. He said one was brought out from a room. He said he was sitting in the middle of the room and stayed there and that the man was talking to one of the other authorities there; that then they took him back in the room, came out and asked Mr. Dowd if he had seen anyone who had been present at the time of the robbery. He said that the man with the co-defendant whom he recognized was in a suit and Mr. Dowd had assumed perhaps he was a federal authority. The co-defendant had been wearing a sport shirt. Mrs. Winkle testified that at the F.B.I. headquarters she saw suspects across the room coming out of an interrogation room and that the eyewitnesses present were asked to look at them and see if they recognized them. She said they were with a couple of F.B.I. men who were wearing suits. Nobody present was dressed as the two robbers had been dressed at the time of the crime.

Mrs. Clune testifed that on the afternoon of July 18th at 2:30 P.M. the manager said "they" wanted the witnesses to go downtown and identify the bank robbers—if they were the bank robbers. She corrected herself then and said, "No, he just * * * he said to go downtown and identify the robbers." The manager had driven Mrs. Clune and Mrs. Winkle down. She said they had discussed identification in the automobile on the way and she had said she could identify one but was not sure of the other.

Appellant does not attack the sufficiency of the evidence but asserts now that the identification proceedings as conducted at the F.B.I. headquarters were held in disregard of fundamental procedural precautions. He concedes that United States v. Wade, 1967, 388 U.S. 218, 224, 225, 87 S.Ct. 1926, 18 L. Ed.2d 1149 and Gilbert v. California, 1967, 388 U.S. 263, 273, 274, 87 S.Ct. 1951, 18 L.Ed.2d 1178, are not retroactive to apply here. Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199. He argues, however, that although not entitled to application of Wade and Gilbert, as indicated in Stovall, he is entitled to relief on his claim that the confrontation in his case was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process. He points out that, unlike the circumstances in Stovall, there was no justification for presenting the suspects singly instead of in a line-up or parade of other persons. From the meager descriptions in the record it would appear that the three witnesses who went down to the F.B.I. headquarters recognized which of the men they saw were F.B.I. agents or "authorities" and which were suspects, and that they went in the first place

expecting to see suspects whom they would be asked to identify. Obviously this is a deplorable way to run a line-up. But we must ask ourselves whether in the circumstances of this case we are faced with plain and reversible error.

In spite of the suggestible circumstances of the confrontation at the F.B.I. headquarters and the fact that Mr. Dowd thought appellant looked a great deal like the robber who remained in the lobby, he did not identify appellant as that robber. Mrs. Winkle remembered seeing the appellant at the F.B.I. headquarters, but nevertheless testified that she could not positively identify him then or at the trial. At the trial, Mrs. Clune identified both defendants but seemed to disagree with the other eyewitnesses as to which was the man who remained in the lobby and which the one who went behind the cages, although she described one man as taller and stockier than the other. The jury saw both defendants and were in an excellent position to evaluate her evidence.

Neither Mrs. Walker nor Mrs. Stratman who identified both defendants participated in the improper identification proceedings at the F.B.I. headquarters.

The government invites our attention to the comment in Wade, 388 U.S. at page 240, 87 S.Ct. 1926 where the Court says that identification by witnesses at the new trial shall not be excluded without giving the government an opportunity to show that in-court identification was based on observation of the suspect other than the improper line-up identification. The Court listed various factors for consideration, such as

> [T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.

The three eyewitnesses here who went to the F.B.I. headquarters had ample opportunities to observe the two robbers only a few hours prior to their visit. Mrs. Winkle recognized the co-defendant as a man who had been in the Bank twice before, for whom she had changed a $20 bill and with whom she had a conversation on both occasions.

There was ample evidence to support a conclusion that the in-court identifications originated from sources independent of the F.B.I. proceeding. Admitting this testimony did not constitute plain or reversible error as appellant contends. Apart from the photographs taken of the robbery in process, the jury were presented with overwhelming circumstantial evidence. Were we inclined to the view that admission of this evidence was erroneous, which we are not, we would have to deem it, in this context, harmless error.

■ Appellant sought discovery under Rule 16, Federal Rules of Criminal Procedure, which permits the trial court to order government counsel to allow a defendant to inspect, and copy or photograph books, papers, documents, tangible objects, etc. in the control of the government on reasonable request and a showing of materiality to preparation of a defense.

Appellant's motion sought all statements made by defendant and "All photographs, books, papers, documents or tangible objects obtained from or belonging to the defendant seized * * * * " stating that it was necessary to grant this motion "in order to protect the defendant from losing his constitutional rights to a fair and impartial trial herein."

In his motion for a pretrial conference, defense counsel stated that a conference was essential to enable defendant to obtain certain evidence favorable to him, material to his innocence which was in the exclusive possession of the U. S. District Attorney.

In its response, the government asserted that there were no statements made

by defendant other than a memorandum of an interview with him. The government expressed no objection to defendant's inspection of items seized and attached an inventory of those items for his perusal and stated further that other than those items already returned to the defendant for which his receipt was held and money to the amount of $12,267.58 which had been turned over to the U. S. Marshal, the items would be available for inspection and photo-or other copying at the F.B.I. office in Indianapolis on reasonable advance notice. The government opposed a pretrial conference as unnecessary. The defendant's motions were denied.

Appellant now argues that the list, which he could probably have compiled himself from memory, was useless to him without any knowledge of the chain of custody which became important during the trial. He concedes that Rule 16 leaves the matter of discovery to the trial court's discretion but urges us to find an abuse of that discretion in denial of his motion. He argues that anything the government proposed to introduce in evidence would be material to his defense, apparently to justify the failure directly to meet the requirement of Rule 16 for a showing of materiality to preparation of a defense. At no point, however, is there any satisfactory explanation of the failure to take advantage of the prosecution's voluntary offer to allow inspection and copy of the items. That offer may well have been the basis for the Trial Judge's denial of an order expressly directing the government counsel to do what government counsel proposed to do without any court order.

■ Raised for the first time in the appellant's reply brief is a fourth point based on the decision in Bruton v. United States, May 20, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, which was published too late to be included in his initial brief.

Appellant, like Bruton, had sought and been denied a separate trial. As in Bruton, a confession of the co-defendant was admitted in evidence. Unlike the procedure in Bruton, appellant's name was edited out of the statement. In Bruton, the jury had been instructed as to Bruton to disregard the co-defendant's statement which inculpated both Bruton and the co-defendant. On appeal the statement had been held inadmissible as to the co-defendant and the co-defendant's conviction was set aside. Bruton's conviction was affirmed because the jury had been instructed to disregard the statement as to him, on the authority of Delli Paoli v. United States, 1957, 352 U.S. 232, 239, 77 S.Ct. 294, 1 L.Ed. 2d 278, that the instructions were sufficiently clear and it was reasonably possible for the jury to follow them. The Supreme Court reversed that decision.

Appellant explains that he did not cite the denial of motion for severance as reversible error because of Delli Paoli, which has now been overruled by Bruton (391 U.S. 126, 88 S.Ct. 1620).

In oral argument, the government contended that Bruton ought not be applied retroactively in view of the long reliance on Delli Paoli. The Supreme Court in Roberts v. Russell, 1968, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed. 1100, has held otherwise. See also United States v. Lyon, 7 Cir., 1968, 397 F.2d 505, 510.

The question before us is therefore whether Bruton requires reversal of the conviction in this case.

The Supreme Court in Bruton in speaking of alternative methods to admit a confession against the confessor without infringing the non-confessor's right of confrontation refers in a footnote (391 U.S. 134), to deleting references to co-defendants. That was precisely the procedure followed here.

Special F.B.I. Agent John William Davis testified to the oral statement made by the co-defendant after the latter had been advised of his rights. The statement clearly inculpates the co-defendant and an unnamed friend who assisted him in the robbery. In the footnote mentioned, the Court in Bruton alludes to the difficulty of relating X's confession without reference to Y and

points out the unlikelihood that an accidental slip could be remedied by instructions to disregard.

In this case there was no such slip and there were no instructions to the jury to disregard the confession as to appellant. Appellant was not mentioned. Appellant argues that the jury must have assumed that he was the unnamed friend. However, the appellant's defense was not based on the theory that no robbery had occurred or that two robbers were not involved in it, but on the theory that he was not one of those two; that the police had arrested the wrong man and had allowed the other companion of the co-defendant, the real culprit who had robbed the Bank with the co-defendant, to escape through investigative ineptitude.

At the hearing on the motion to suppress Agent Grabham had testified that he asked the co-defendant where the other man was and the co-defendant had said "He left on a bus." At the trial, the defense in the course of cross-examination made a point of the fact that the police and agents had looked for only two men and had ceased their search when they found appellant although the co-defendant had told them "the other man already left." Defense counsel underlined the fact that the two names on the Motel registration were Robert Satterfield and John Kelso (not John Gregg) and that appellant was not found in Room 205 but elsewhere in the Motel.

Because of the particular circumstances of this case, the danger sought to be avoided by Bruton: the use of limiting instructions as a substitute for the constitutional right of cross-examination, did not arise.

We find no reversible error. The judgment of the District Court is affirmed.

Affirmed.

KERNER, Circuit Judge.

I concur in the result reached by my brethren.

I am in full agreement with the majority that there was no defect in the search conducted by Federal and local police forces. An increasing number of cases before us have tried to play on the time delay which usually occurs between the commencement of an investigation by local police and the arrival of Federal forces, usually the FBI. As long as the evidence sought to be introduced at trial is not tainted by being obtained through any act which the Federal forces would be prohibited from doing, I see no harm in its use. In this age of increasing criminal sophistication and the nationwide rise in crime, it is imperative that there be the fullest possible cooperation between all law enforcement services. It would be anamalous, to say the least, to restrict the right to prosecute to that jurisdiction whose law enforcement officials were simply first to reach the scene of a joint investigation as to which there was concurrent jurisdiction. This would be the practical result of defendant's position. I perceive no constitutional or other principle which would compel such a result, much less make it desirable. *Cf.* United States v. Satterfield, 410 F.2d 1351, at 1353 (7th Cir. May 23, 1969).

Likewise, I agree with the majority as to its disposition of the discovery question. The United States Attorney acted most commendably in offering to let the defense see all the evidence without opposition or restriction. In so doing, he acted in the best tradition of criminal justice looking to its impartial truth-seeking function and not merely the rigid formalities of the adversary process. This action was proper under the circumstances while not impairing the interest of society in justice and defendant cannot profit from his failure to utilize the offer made to him.

Regrettably, I cannot agree with my senior brethren as to the two remaining issues. While the opinion concedes the gross impropriety of the "lineup" technique used here, it makes its own finding that there was an independent basis for the in-court identifications. The record does support such a conclusion as to Mrs. Winkle's identification. However, I re-

**950**

gard it as insufficient as to the identifications of the other two participating witnesses to the improper "lineup." *Cf.* Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969) and United States v. Gilmore, 398 F.2d 679 (7th Cir. 1968). In my view, a hearing should have been held, out of the presence of the jury, to determine whether there was, in fact, an independent basis for these identifications. United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Accordingly, I regard the admission of these identifications as error. However, as later concluded, this was harmless error.

I am also unable to agree with the majority's disposition of the *Bruton* question. While Satterfield's confession was redacted as regards defendant, the documentary evidence before the jury could have left no doubt in the minds of the jury as to the identity of the "friend" mentioned therein. In this regard, it is important to note that the footnote relied on by the majority also contains three citations which cast doubt on the value of redaction standing by itself as a method of curing possible error. Bruton v. United States, 391 U.S. 123, 134 n. 10, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Nor do I believe that the admission of the confession was rendered of no consequence by the nature of the defense. This is especially so in view of the fact that not even the curative instruction found insufficient in *Bruton* was attempted to be given here.

However, despite the constitutional gravity of the two defects in the proceedings below, I am of the opinion that they can be disregarded under the harmless error rule. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1964); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969); United States v. Satterfield, supra, 410 F.2d 1351, at 1354; and United States v. Lipowitz, 401 F.2d 591, 593 (3d Cir. 1968). The evidence adduced at trial included the extensive physical evidence seized in the legal searches, the two untainted identifications, Mrs. Winkle's tainted identification which had an independent basis, and the photographs taken while the robbery was in progress. This mass of evidence was, in my opinion, more than sufficient to hold that defendant was guilty beyond a reasonable doubt despite the two constitutional errors below. For this reason, I concur in the affirmance of the conviction.