**UNITED STATES of America ex rel. Nelson M. GARCIA, Petitioner-Appellant,**

v.

**Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Appellee.**

No. 671, Docket 32595.

United States Court of Appeals Second Circuit.

Argued July 22, 1969.

Decided Oct. 14, 1969.

David Kremen, New York City (Botein, Hays, Sklar & Herzberg, Charles A. Stillman, New York City, on the brief), for petitioner-appellant.

Michael Jaffe, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for appellee.

Before WATERMAN and HAYS, Circuit Judges, BARTELS, District Judge.*

BARTELS, District Judge:

Nelson M. Garcia appeals from an order of the District Court, dated June 19, 1968, denying his application for a writ of habeas corpus. He was convicted with a co-defendant, Rudolfo Milan, in the Supreme Court, Kings County, of robbery, assault and grand larceny and

* Of the Eastern District of New York, sitting by designation.

on January 14, 1964, he was sentenced to a term of 10 to 20 years in a State prison on the robbery conviction, which judgment was unanimously affirmed by both the Appellate Division and the New York Court of Appeals.

Appellant alleges a number of violations of his constitutional rights, the most significant of which is an allegedly improper pretrial identification which he states tainted his in-court identification.

On May 28, 1963, at 12:35 P.M., George Diaz and Gerardo Quintano, employees of the Argus Chemical Corporation, proceeded to the Chemical Bank on Court Street, Brooklyn, to pick up in Quintano's car the company's weekly payroll of approximately $16,000. Quintano remained in the car while Diaz went for the payroll. As Diaz re-entered the car two men, one armed with a gun (identified in court by both Diaz and Quintano as Milan) and the other with a knife (identified in court by both Diaz and Quintano as Garcia) forced their way into Quintano's car. Garcia moved behind the wheel and held a knife at Quintano's left side, and Milan jumped into the back of the car and held a gun to Diaz's head crying "Hold-up, man." While Garcia drove down Court Street, they passed a police car. Milan cocked the gun and warned Diaz and Quintano: "Look straight ahead. If you move, I'll kill you." After proceeding to the entrance ramp of the Brooklyn-Queens Expressway both men ordered Diaz and Quintano out of the car and drove away with the payroll.

During this trip Quintano was sitting next to Garcia and testified that he "saw Garcia all of the time from the beginning." Shortly after the holdup Diaz and Quintano were shown photographs at the police headquarters and several weeks later they were taken to a Cuban party in Manhattan for the purpose of identifying suspects. On neither occasion were they able to make an identification.

In the first week of July, 1963, the police received a telephone tip from an informer to the effect that two men, one named Garcia, were arguing in a Brooklyn candy store (luncheonette) over the split of a $16,000 stickup. There is nothing in the record indicating that Diaz and Quintano were told the substance of the tip or that they were given any lead by the police. Both Diaz and Quintano were then escorted to the luncheonette in Brooklyn by two police officers. While the police waited outside, Diaz and Quintano entered the luncheonette. Inside were Milan, Garcia and two other persons. Both Diaz and Quintano testified that they recognized Garcia in the luncheonette and that Garcia threatened Quintano with death if he informed the police. Diaz testified that he immediately recognized the appellant Garcia, who remarked to Quintano:

"Quintano, I know where you live."

"You have three children. Your father I know as well—your partner— I know where he lives as well. He has one child. If you go to the police and tell them, I have a family, and I have friends. They are going to kill you."

During cross-examination the Court asked Diaz:

Q. "Which one did you recognize?

A. The man, Garcia.

Q. You recognized Mr. Garcia?

A. Yes."

The Court: "You were sure of Garcia?"

The Witness: "Yes."

Thereafter Diaz and Quintano left the luncheonette and Detective Cronin, after questioning Milan and Garcia, arrested both and took them together with Diaz and Quintano to the police station. Detective Cronin testified that Milan and Garcia were identified from a lineup of five other men. Diaz testified that he picked Garcia and Milan out of a lineup, but he also testified that after the lineup Milan and Garcia were brought in separately and identified as the robbers by the two witnesses. In court Milan and Garcia were definitely identified.

## Pretrial Identification

█ The exclusionary rules fashioned in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), regarding in-court identification preceded by tainted pretrial identification in lineups, have been held non-retroactive in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There the Supreme Court stated that the test for pre-*Wade* and *Gilbert* cases, such as the instant one, was governed by the principles of due process. The question is whether the confrontation in this case resulted in such unfairness that it infringed Garcia's right to due process. Garcia's counsel argues that the identification, both at the luncheonette and at the police station, was highly suggestive and presented the witnesses with no alternative, resulting in a substantial likelihood of irreparable misidentification, citing among other authorities, Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); United States v. Gilmore, 398 F.2d 679, 682 (7th Cir. 1968), and Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966). We find these cases singularly inapposite.

██ It is clear that the witnesses were brought to the luncheonette for the purpose of identifying both defendants. But there is nothing in the record which indicates a suggestive act or tip by the police to the witnesses which unfairly focused the attention of the witnesses upon Garcia. It turned out that suggestion was unnecessary and if present, was harmless, because Garcia quickly identified himself by his threats of death to Quintano if the latter went to the police. In view of this self-identification, it is difficult to comprehend how the later identification at the police station, which was made at first from a lineup and not from a showup, could taint the in-court identification. Considering the facts and circumstances present, we cannot say that the luncheonette and police station viewing violated Garcia's right to due process of law in any respect. Stovall v. Denno, *supra*. In a number of cases this court has stated that the identification procedure violates due process only when the totality of the circumstances is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 218 (2d Cir. 1969), cert. denied 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969); United States ex rel. Davis v. Follette, 410 F.2d 1135 (2d Cir. 1969); United States ex rel. Williams v. La Vallee, 2d Cir., 1969, 415 F.2d 643; United States v. Scully, 2d Cir., 1969, 415 F.2d 688. By this standard the identifications of both Milan and Garcia were reliable and consonant with their constitutional rights of due process.

## Other Objections

█ Garcia's other objections are equally without merit. He objects to testimony discrediting his alibi. Detective Cronin testified that during the post-arrest interrogation Garcia said that on May 28, 1963, the day of the robbery, he thought he was working at a garage or was at his attorney's Court Street office. Cronin thereupon investigated this statement by speaking to a Mr. Ogelvy at the garage, who informed Cronin that Garcia had not been working at the garage since May 25th. At the trial Cronin was permitted to testify as to the statement made to him by Ogelvy. Garcia claims that it was the State's burden to disprove his alibi and that the State's failure to call Ogelvy deprived him of his right of confrontation in violation of the proscription laid down in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), held retroactive by Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), reh. denied, 393 U.S. 899, 89 S.Ct. 73, 21 L.Ed.2d 191 (1968). Garcia's alibi was not limited to presence at the garage but was in the alternative, i. e., the garage or the attorney's office. Garcia's counsel offered no objection to Cronin's testimony

concerning Garcia's alibi, failed to cross-examine Cronin on the subject, failed to comment upon it in his summation, and made no request to the court for a charge on the issue. While the hearsay objection was present, we fail to see how the *Bruton* principle was applicable.[1] In any case, Garcia decided to remain mute during the trial when this evidence was introduced and accordingly is not now in a position to raise the claim of error in this Court upon that issue. Rule 51, Fed.R.Crim.P., 18 U.S.C.A.; United States v. Indiviglio, 352 F.2d 276, 280 (2d Cir. 1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); cf., Henry v. Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), reh. denied, 380 U.S. 926, 85 S.Ct. 878, 13 L.Ed.2d 813 (1965).

■ Garcia argues that the prosecutor made an unfair use of a gun before the jury at the trial. Apparently to demonstrate the kind of gun which was used and to ascertain if Diaz could recognize it as such, the prosecutor marked for identification an automatic hand weapon. During a portion of the trial the prosecutor kept the gun in view of the jury and had at one time pointed it at the jury. Upon the objection of the defense counsel, this conduct was ruled objectionable and proscribed by the court. Nevertheless, in the summation to the jury the prosecutor referred to the gun although it had been removed from the case. While this behavior cannot be condoned, it is at most a trial error without constitutional dimensions. See Alexander v. United States ex rel. Kulick, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); United States ex rel. Morton v. Mancusi, 393 F.2d 482 (2d Cir. 1968), cert. denied, Morton v. New York, 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 264 (1968); United States ex rel. Colon v. Follette, 366 F.2d 775 (2d Cir. 1966); United States ex rel. Castillo v. Fay, 350 F.2d 400 (2d Cir. 1965), cert. denied, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966).

■ Finally, Garcia claims he was unable to understand the proceedings because he could not comprehend English. As demonstrated by the fact that Garcia made his own application for a reduction of bail in fluent English without any assistance from counsel or an interpreter, it was obvious that he spoke and understood English sufficiently to enable him to comprehend the proceedings against him. Consequently, this objection is frivolous.

Affirmed.

1. Assuming, *arguendo*, *Bruton* was applicable, the case against Garcia was so overwhelming that the alleged violation of *Bruton* would constitute harmless error beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).