Thomas Adams ELLINGTON, Petitioner,

v.

J. D. COX, Superintendent, Virginia State
Penitentiary, Respondent.

Civ. A. No. 70–C–4.–D.

United States District Court,
W. D. Virginia,
Danville Division.

Feb. 19, 1970.

Edward J. White, Asst. Atty. Gen.,
Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This proceeding comes before the
court on a petition for a writ of habeas
corpus, filed *in forma pauperis*, by

Thomas Adams Ellington, a prisoner of the State of Virginia, pursuant to the provisions of 28 U.S.C. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated January 7, 1970. Upon its receipt by this court it was properly filed herein.

Petitioner Ellington is presently serving a fifteen (15) year sentence in the Virginia State Penitentiary pursuant to his jury conviction on December 6, 1967 in the Circuit Court of Halifax County, for attempted rape.

█ The records in this case indicate that the petitioner has exhausted his available state court remedies. On September 7, 1968 the petitioner filed his habeas corpus petition with the Circuit Court of Halifax County dealing with his conviction in December, 1967. The trial court granted him a hearing on the 7th of January, 1969, wherein, in depth testimony transpired concerning the points that petitioner has raised in his petition before this court.[1] Shortly thereafter, the Circuit Court for Halifax County denied the petition on the 21st of January, 1969. The Virginia Supreme Court of Appeals affirmed the dismissal on the 14th of October, 1969. Therefore, this court concludes that the petitioner has met his exhaustion requirements relative to his habeas corpus petition, as required by 28 U.S.C. § 2254, and as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

█ After careful consideration of the records in this case, this court is of the opinion that such records provide a sufficient basis upon which a decision can be made. The state court habeas corpus hearings of June 26, 1968 and January 7, 1969 dealt exactly with the points that have been raised by the petitioner before this court. These hearings, plus the original trial transcript, provide a comprehensive record. Accordingly, a plenary hearing will not be necessary.

Petitioner alleges that he was subject to an illegal line-up, as he was without the assistance of legal counsel prior to said line-up, and this resulted in a denial of due process of law. Although additional issues were raised in the state habeas corpus proceedings petitioner has sought only to raise this one issue in the federal court. Substantial attention has focused on this question during recent years in light of the many decisions dealing with one's right to have the assistance of counsel prior to the actual trial. In order to adequately determine the issue before this court it seems necessary to point out the relevant facts.

During the afternoon of July 12, 1967, one Lana Anthony Conner, a woman in her sixth month of pregnancy, was assaulted and attempted rape committed on her. Mrs. Conner gave police officers a description of her assailant shortly after the attempted rape took place. The next morning she was shown a photograph of the petitioner, to which she couldn't positively identify him as the assailant. (During the habeas corpus hearing two photographs of the petitioner were introduced. Petitioner's exhibit number 1 was the same one shown Mrs. Conner by the police officers on the 13th of July, 1967 prior to the arrest and subsequent line-up of Ellington. The petitioner's wife testified that this picture had been taken some three or four years prior to the incident on July 12, 1967. Respondent's exhibit number 1 was a photograph taken after the petitioner's conviction in the case at bar.) However, based upon the description given to the officers the evening of the assault, and the prior knowledge of several officers who had seen a man of this description earlier that day, an arrest was made of the petitioner on the 13th of July, 1967, in Mecklenburg County, Virginia.

[1]. A prior habeas corpus hearing (June 26, 1968) took place in the Circuit Court of the City of Richmond relative to several points discussed at the January 7th hearing.

The testimony at the habeas corpus hearing points out that just after the apprehension of the petitioner he was advised of his rights. He declined to make any statement other than that he wanted to talk with his lawyer. He subsequently was placed in jail. On the following day, Mrs. Conner appeared at the police station to make a statement relative to the occurrences that had existed some two days before. The record shows that the police officers at the Halifax jail agreed that a line-up should take place at the jail while Mrs. Conner was present. Ben Covington, Chief of Police, City of South Boston, testified that he "felt we ought to be sure we had the right man. I thought we should let this lady see him in a line-up rather than see him singularly". (Habeas Corpus Hearing—January 7, 1969—Page 35.) Prior to the actual line-up, she was not in the presence of the petitioner, nor asked to identify him.

As to the line-up itself, petitioner was requested to change clothes which were furnished by the police department. Along with four other inmates, petitioner was placed in a line-up composed of "mixed men, different ages and sizes". (H. C. Hearing, January 7, 1969—Page 42.) After the men were lined up against a wall, Mrs. Conner appeared and observed these men through a doorway. Upon an examination of these men she indicated that the petitioner was the man who was the assailant. The record shows that the petitioner was not advised of his right to have counsel present at the line-up (H. C. Hearing, January 7, 1969—Page 37), however, shortly after the line-up took place on the morning of the 14th of July, counsel was appointed for the petitioner. (H. C. Hearing, January 7, 1969—Page 40.)

As was stated at the outset, we are primarily concerned with whether or not the petitioner was denied his constitutional rights as a result of the line-up procedure.

A month before the July 14th line-up, the United States Supreme Court rendered two decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) which viewed a post-indictment line-up as a "critical stage" of the proceedings. The court contended that the right to have the assistance of counsel at such line-ups was within the purview of the Sixth Amendment. The facts, in the case at bar, clearly show that petitioner was not afforded counsel prior to the line-up in question, even though he had requested to consult with his lawyer. Testimony at the hearing further indicates that the petitioner did not object to the line-up procedure. Mr. W. M. Lewis, co-counsel for the petitioner in his original criminal trial, stated that he didn't recall that he

* * * (petitioner) made any complaint in my presence about the line-up. I think he probably talked to Mr. Anderson about that. My conversation with Mr. Anderson, it appears he knew more about the line-up than I did, but the line-up was never considered as a consequential importance to the defense as we approached it. As far as I can recall, I know of no complaint by Mr. Ellington concerning the line-up. (H. C. Hearing, January 7, 1969—Page 72.)

Although petitioner apparently did not raise objections to the line-up procedure, this court does not consider his actions as an "intelligent waiver". United States v. Wade, 388 U.S. at 237, 87 S.Ct. 1926. Also see, Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1961). It has already been brought out that the petitioner continually sought the advice of counsel from the moment of his arrest.

The Supreme Court, through Justice Brennan, in examining the courts' decisions from Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1965) stated that

* * * [I]t is central to that principle that in addition to counsel's pres-

ence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment.

The court concluded by saying:

\* \* \* [I]n sum, the principle of Powell v. Alabama and succeeding cases requires that we scrutinize *any pretrial confrontation* of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witness against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice. (Emphasis Added) United States v. Wade, 388 U.S. at 226–227, 87 S.Ct. at 1932; Also see, Gilbert v. California, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

In light of the *Wade* and *Gilbert* decisions, some courts have extended the application of one's right to counsel at line-ups to situations where there has been an arrest, but prior to any indictment. The courts have reasoned that post-arrest but pre-indictment stages are also a "critical" confrontation period wherein one's right to counsel extends. Rivers v. United States, 400 F.2d 935 (5th Cir. 1968). In one case, People v. Martin, 273 Adv.Cal.App. 724, 78 Cal. Rptr. 552 (1st Dist.Ct.App. 1969), where the defendant was viewed through a one way mirror by a robbery victim shortly after the offense had been committed, the court maintained that the defendant had a right to counsel at the time he was viewed by the robbery victim even though this was prior to any arrest. In the case at bar, petitioner Ellington was in the post-arrest-pre-indictment stage.

■ There is no question about whether or not the petitioner was denied his constitutional rights during the line-up proceedings. This case easily falls into the great weight of authority which considers such line-up procedures as illegal. Counsel for the respondent agrees to such a conclusion in the habeas corpus hearing. However, an exception to above considered line-up question has been established by an equal amount of judicial decisions. The law is quite clear on the significance placed upon in-court identifications of the accused and their relationship to, and effect upon, identifications made from line-up procedures. The *Wade* case covered this very point. The main theory behind in-court identifications, is that, they are inadmissible when they are based upon a prior line-up identification which occurred without counsel being present, or when there was not an "intelligent waiver" of the same. However, when the in-court identification of the accused had an origin independent from any prior line-up procedure, where counsel was not present, then such in-court identifications are considered admissible into evidence. Justice Brennan stated in *Wade* that

\* \* \* [W]here, as here, the admissibility of evidence of the lineup identification itself is not involved, a *per se* rule of exclusion of courtroom identification would be unjustified.

\* \* \* [T]he State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. 388 U.S. at 240, 87 S.Ct. at 1939.

The original trial court testimony of December 5th and 6th, 1967, points out that the petitioner was clearly identified in the courtroom as the person who committed the attempted rape. This is reinforced by the judgment of the Circuit Court of Halifax County relative to petitioner's habeas corpus petition before

that court on the line-up procedure question. Judge Stuart L. Craig expressed the opinion that

> * * * it is clear from the *Wade* case that courtroom identifications are not per se inadmissible. It has been held, even though there has been an improper line-up, *that courtroom identification is admissible when it can be shown that the in-court identification is based on matters other than the line-up identification and not tainted by it.* Of course, we are here today principally to decide whether or not the in-court identification had an independent source, or whether the introduction of the evidence in the in-court identification was in error. In the Court's judgment, even though the line-up was improper, the in-court identification by Mrs. Conner of the defendant was based, not principally on the line-up, but upon her experience of being with this man for over an hour during the alleged act.

> * * * [I]n the Court's judgment, it has been established, from the reading of this transcript, by clear and convincing evidence, that the in-court identification of Mrs. Conner was based upon her observation of this defendant during the alleged crime, rather than her picking him out the line-up on July 14th. (Emphasis Added) (H. C. Hearing, January 7, 1969 —Pages 85–86).

Judge Craig further went on to say that the statement made by Mrs. Conner to the jury, namely that she had previously identified the petitioner in a line-up, was harmless error.

* * * [I]t didn't add or subtract or deter in any way from her testimony about what happened to her that day. This was a minor, insignificant point in the trial. It was not even brought up by anybody, and in the Court's judgment had no effect whatsoever on the jury. (H. C. Hearing, January 7, 1969—Page 87.)

This court concurs that the error was harmless beyond a reasonable doubt.

██ After consideration of all the testimony given at the original criminal trial and the two subsequent habeas corpus hearings, this court is of the opinion that the *Wade* case exception to the inadmissibility of line-up identifications, where the accused is without legal counsel, should be applied. Mrs. Conner's identification of the petitioner had an "origin independent" from that of the prior line-up identification. Also, the application of the *Gilbert* case does not provide a basis upon which the petitioner is entitled to a new trial because any mention of the line-up identification by the victim (Mrs. Conner) to the jury was harmless, beyond a reasonable doubt. As pointed out previously, Mrs. Conner based her identification of the petitioner on actual observance and contact with him for over an hour during mid-afternoon on July 12, 1967. This hour long observation, rather than the subsequent line-up on July 14, 1967, served as the basis upon which the petitioner was clearly identified as the assailant.[2]

Therefore, it is the judgment of this court that petitioner's habeas corpus petition be denied. To hold otherwise

---

2. The Supreme Court, in the *Wade* case, mentioned that additional factors may be considered in making a determination as to whether the courtroom identification has been "purged of, the primary taint" of the illegal line-up procedure.

> * * * [A]pplication of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup

description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. 388 U.S. at 241, 87 S.Ct. at 1940.

would run contra to the law and evidence in the case at bar.

The clerk is hereby directed to send a certified copy of this opinion to the petitioner and to the respondent, the Honorable Edward J. White, Assistant Attorney General, Supreme Court Building, Richmond, Virginia.