**David LeBARRON, Petitioner,**

v.

**John C. BURKE (now Elmer O. Cady), Warden, Wisconsin State Prison, Respondent.**

**No. 69–C–201.**

United States District Court,
W. D. Wisconsin.

July 17, 1970.

Frederick T. Rikkers, court-appointed, Madison, Wis., for petitioner.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, presently incarcerated in the Wisconsin State Prison, contends that he is confined in violation of rights secured to him under the Constitution of the United States. Leave was granted to file the petition *in forma pauperis*; respondent has filed a response; and counsel has been appointed to represent petitioner.

Two of petitioner's asserted grounds for relief were dismissed at the time the response was ordered herein. The only issue remaining is this: was a police lineup for purposes of identification conducted in such a fundamentally unfair manner as to deprive petitioner of due process of law?

The facts relating to the lineup are fully reflected in the transcripts of petitioner's trial and preliminary hearing. A copy of these transcripts has been furnished to the court and is a part of the record herein. I conclude that no federal evidentiary hearing is necessary, and that the issue involved can be decided on the basis of the record alone.

These are the facts with respect to petitioner's arrest and conviction.

On April 14, 1965, petitioner was convicted in the Circuit Court for Eau Claire County, after trial to a jury, of the crime of attempted rape (§ 939.32, Wis.Stats.). He had entered a plea of not guilty and a special plea of not guilty by reason of insanity or feeblemindedness. On June 21, 1965, petitioner was sentenced to an indeterminate term of not more than 15 years in the Wisconsin State Prison. His motion for a new trial was denied by the circuit court, and the conviction was affirmed by the Wisconsin Supreme Court in Le Barron v. State, 32 Wis.2d 294, 145 N.W.2d 79 (1966).

The allegedly unconstitutional lineup was held on the evening of March 4, 1965.[1] Petitioner was arrested that evening and brought to the Eau Claire police station. The complainant was then asked to come to the police station. Upon her arrival she was greeted by police officer Donald Ausman, whom she had met earlier and knew to be a police officer, and was asked: "Make an identification either one way or the other of the subject we have in the room with myself." Trial transcript at 66. Officer Ausman then stepped into a "viewing room". The complainant looked into the room through one-way glass. Only petitioner and Ausman were present in the room. Complainant observed petitioner; she heard him speak, at Ausman's direction, the same words her attacker had allegedly used. Ausman then left the room and asked complainant if petitioner was her attacker. She stated that she thought he was, on the basis of his general appearance, hair, profile, voice and manner of dress. Tr. at 68.

On the same evening she was attacked, complainant looked through numerous photographs of men at the police station. Petitioner's photograph was not among those shown to her, and she did not identify anyone from the photographs as her attacker. The next morning, March 4, 1965, she was called to the police station and viewed a man through one-way glass, but she did not identify him either.

At the preliminary hearing and again at the trial, complainant identified petitioner in court as her attacker. Also, in both proceedings, the facts relating to the pretrial identification of petitioner were initially elicited by petitioner's counsel on cross-examination of complainant.

Petitioner has presented his contention that he was denied due process because of the unfair confrontation in a

petition for a writ of habeas corpus to the Wisconsin Supreme Court. That court denied the petition in an unpublished opinion, LeBarron v. Burke, No. 69/69 (June 27, 1969). State remedies have thus been exhausted. 28 U.S.C. § 2254(b).

Petitioner was definitely not identified in a manner consistent with usual police lineup procedures. What petitioner calls a "lineup" was not even one in name. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). In Stovall, supra, the Supreme Court held that a denial of due process of law could be found if the confrontation between an accused and a witness for purposes of identification was "unnecessarily suggestive and conducive to irreparable mistaken identification." Id. at 302, 87 S.Ct. at 1972. The court added: "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. * * *." Id. See Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L. Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Gilmore, 398 F.2d 679 (7th Cir. 1968).

The Wisconsin Supreme Court did not apply the teaching of Stovall v. Denno, supra, in rejecting petitioner's claim of denial of due process because of an improper identification procedure. The court stated:

"[N]o objection was made to the lineup procedure until this time. The lineup appears to be that in name only, for the prosecutrix recognized one of the two men in the lineup to be a police officer.

---

1. Testimony at the preliminary hearing shows that the lineup was actually conducted about 12:15 a. m. on March 5, 1965, but the transcripts continually refer to the "evening" of March 4, and therefore I will also refer to the lineup as having occurred on the evening of March 4.

"To now attack the identification process appears inconsistent with defendant's previous contentions. Petitioner originally pleaded not guilty by reason of insanity and evidence pro and con was submitted at the trial." LeBarron v. Burke, *supra*, slip opinion at p. 2.

█ I am unable to agree with the reasoning by which the Wisconsin Supreme Court dismissed petitioner's due process contention. The transcripts clearly show that petitioner entered *both* a plea of not guilty and a plea of not guilty by reason of insanity or feeblemindedness. The jury necessarily had to determine first whether petitioner committed the crime charged before it could determine whether he was insane or feeble-minded when he committed it. Nowhere does it appear that petitioner admitted his guilt. He testified at the trial that he was not present at the scene of the crime. His special plea of not guilty by reason of insanity cannot render harmless the State's denial of due process, if such a denial resulted from the improper pretrial confrontation.

█ I find that the confrontation held here was "unnecessarily suggestive and conducive to irreparable mistaken identification." Asking the complainant to view in the police station sometime after midnight a man in the company and apparent custody of a police officer could not help but implant the idea in complainant's mind that this man was strongly considered a suspect by the police. Such an implication could have been obviated by placing the suspect in an ordinary lineup with other men. See United States ex rel. Garcia v. Follette, 417 F.2d 709, 711 (2nd Cir. 1969).

Although the confrontation was improper, the question remains whether, under the "totality of the circumstances," *Stovall, supra*, at 302, 87 S.Ct. 1967, petitioner was convicted without due process of law.

Although a pretrial identification may occur in circumstances which are suggestive of an accused's guilt, the circumstances may nevertheless be such that a denial of due process of law will not be found. One example is a situation in which the witness is *in extremis* and an immediate face-to-face confrontation with a suspect is necessary. See *Stovall, supra*, 388 U.S. at 302, 87 S.Ct. 1967. A second example is a situation in which the police allow a victim or witness to confront a suspect very shortly after the commission of a crime, and at the scene or nearby. See Stewart v. United States, 418 F.2d 1110 (D.C.Cir. 1969) (two hours after the crime; only a few minutes after the witness had seen the suspect carrying the loot; and view taken at suspect's front door nearby, rather than at police station); Young v. United States, 132 U.S.App.D. C. 257, 407 F.2d 720 (1969) (a few minutes later, and at the scene).

Courts have also rejected a due process contention, in spite of a suggestive pretrial confrontation, when the accused has been identified in court on a basis independent of the tainted confrontation. See, e.g., United States v. Gregg, 414 F.2d 943, 947 (7th Cir. 1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968); Ellington v. Cox, 310 F.Supp. 129 (W.D.Va.1970); United States v. O'Connor, 282 F.Supp. 963 (D.D.C.1968). In these cases the independent basis for identification is usually the observation of the witness during the commission of the offense. *O'Connor, supra*, at 965. See United States v. Broadhead, 413 F.2d 1351, 1360 (7th Cir. 1969). The rationale for such a test is found in the statement in United States v. Wade, 388 U.S. 218, at 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that the prosecution should have an opportunity to show that in-court identification is based on observation other than the improper line-up identification. See United States ex rel. Geralds v. Deegan, 292 F.Supp. 968, 973–974 (S.D.N.Y. 1968).

The following guidelines were set out in *Wade* for determining whether an in-court identification is independent of an improper lineup identification:

"[T]he prior opportunity to observe the alleged criminal act, the existence

of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 U.S., at 241, 87 S.Ct., at 1940.

See also *Gregg, supra,* 414 F.2d at 947.

Passing for a moment the "opportunity to observe the alleged criminal act," application of the remaining guidelines to the present case produces no conclusive result: The pre-lineup description furnished by complainant and petitioner's actual appearance varied somewhat; his hair was originally described by her as shiny black, but she and a police officer testified in court that it then appeared to them dark brown. She looked at numerous photographs in police files, none of the petitioner, and she did not relate any of them to her attacker. Earlier on the day on which she identified petitioner, she viewed another man at the police station through one-way glass, but did not think he was the assailant. The lapse of time between the alleged act and the lineup identification was about 30 hours.

I consider, however, that application of the initial *Wade* guideline, "opportunity to observe the alleged criminal act," does point strongly to a conclusion. The encounter occurred at night, on and near a railroad bridge. There was not much illumination in the vicinity. During most of the encounter, complainant's assailant forced her to keep her head down and not to look at him. She testified that she got one "pretty good look" at petitioner when he initially accosted her, and that she later glanced at him and saw the side of his face "real well" before he pushed her head down. Complainant's identification of petitioner was based to a substantial degree on what she considered to be the similarity between the sound of the attacker's voice at the scene of the crime, and the

sound of the suspect's voice at the police station when he spoke the words suggested by her and required of him by the police; there was no similar occasion for her to hear his voice in the courtroom before she made the in-court identification.

I conclude that complainant's in-court identification of petitioner was not independent of her identification of him at the pretrial confrontation; that her in-court identification was induced by her earlier identification in the station-house; and that petitioner was therefore denied due process of law.

I am strengthened in this conclusion by the fact that complainant's identification at the pretrial confrontation was not unequivocal. After viewing petitioner, she stated to police that she thought he was the man. On cross-examination at trial the following colloquy occurred:

"Q. After you looked through this one-way mirror for a period of time, were you of the opinion that you could identify him or not identify him?

"A. What if it was a little bit of both? His hair wasn't shiny black and his shoes weren't shiny, but his coat and his height and side view was the same as the man that had attacked me."

The trial judge later asked complainant: "Is there any uncertainty in your mind concerning your identifying him here today as the person who accosted you?" Complainant answered "No."

If complainant had been positive and unequivocal in her identification at the pretrial confrontation as well as at the trial, it might be considered that her in-court identification had an origin independent of the pretrial confrontation; however, complainant's "initial uncertainty about identification of the [petitioner] followed by [her] positive testimony at trial demonstrates the dangers inherent in an identification made without proper safeguards." United States v. Gilmore, *supra,* 398 F.2d at 683 (concurring opinion).

The improper identification here cannot be considered harmless error. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There were no corroborating witnesses to complainant's identification of petitioner. Biggers v. Tennessee, 390 U.S. 404, 409, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968) (dissenting opinion); United States v. Gregg, *supra*, 414 F.2d at 947.

For reasons stated, and upon the basis of the entire record herein, I hold that petitioner's conviction was obtained in violation of the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The petition for a writ of habeas corpus is granted, and the petitioner will be ordered discharged from custody under the present judgment of conviction. Execution of the order will be stayed for a period of thirty days, however, to afford the respondent opportunity to appeal from this ruling.

The court appreciates the assistance of Frederick T. Rikkers of the Wisconsin Bar, who has served without compensation as petitioner's appointed attorney.